## In re PARAMOUNT PUBLIX COR-PORATION.

District Court, S. D. New York.
Aug. 22, 1934.

Root, Clark, Buckner & Ballantine, of New York City, for trustee.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for bondholders' committee.

Nathan Burkan, of New York City, for creditors' committee.

Edwin L. Garvin, of New York City, for petitioning creditors.

Cook, Nathan & Lehman, of New York City, for stockholders' protective committee.

Szold & Brandwen, of New York City, for independent bondholders' committee.

CAFFEY, District Judge.

### Uniontown Claims.

The master and all creditors, as well as stockholders, who have appeared are convinced that the proposed compromise would be beneficial to the estate. There is no dissenting voice. At the motion part on August 15 the representatives of a large group of creditors—having claims against the debtor, as I recall, of upwards of $30,000,000—were unanimous in urging approval. So far as I can discover, the creditors who took this position have no interest, in respect to the matter, which is adverse to the interests of creditors who did not attend.

I concur in the view that the terms reached for composure of the controversy involved, as described by the trustees in their petition, should be carried out if they lawfully may be.

The master was in doubt whether, in proceedings under section 77B, Bankr. Act (11 USCA § 207), the court has the right to authorize a trustee to pay cash out of the funds of the estate in accomplishing a compromise settlement with a claimant against the debtor. Assuming that it would be in the interest of all concerned in the estate, the sole question is as to the power of the court.

Subdivision (a) of section 77B, Bankr. Act (11 USCA § 207 (a), provides that, upon the filing of a reorganization petition being approved, during the pendency of the proceedings, the court shall have exclusive jurisdiction of the debtor's property, "and shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature." Subdivision (c) of the section (11 USCA § 207 (c), provides that: "if authorized by the judge," the trustee shall have "the same powers as those exercised by a receiver in equity to the extent consistent with this section."

There is a paucity of court rulings relating to, and, so far as I have found, no square ruling on, the question. Nevertheless, I am persuaded that the court may authorize an equity receiver, appointed by it in the usual form of conservation suit, to employ moneys in his hands belonging to the estate to effect settlement of a claim against the corporation in receivership if it determine that such settlement would be advantageous to the trust estate and its beneficiaries. Cf. American Dist. Steam Co. v. Waltermire (C. C. A.) 231 F. 412; Petition of Baxter (C. C. A.) 269 F. 344. I suspect that the practice in equity courts of approving compromises by receivers of the type presently under consideration has prevailed so long that no one has ever disputed its validity; also that it is for this reason that no published court decision exactly in point can be produced. If a federal equity court possess the jurisdiction, and section 77B has not expressly or impliedly forbidden, then, by force of subdivision (a), I think the court may authorize a trustee in corporate debtor proceedings to make such a compromise.

In so far as I can see, there is nothing in section 77B which is inconsistent with the exercise of such jurisdiction in a reorganization proceeding under the section. On the contrary, it seems to me that, in appropriate cases on the facts, use of the jurisdiction would be in furtherance of the purposes of the section.

As I gather, the master based his doubt upon the possibility that ultimately there may be no reorganization, and that, in consequence, the proceedings for reorganization may be dismissed or the estate be liquidated.

Apparently his premise is that, inasmuch as necessarily there must be equality in the rate of distribution among creditors of the same class in a liquidation, the status looking forward to the contingency of such a distribution must be preserved during the interim from this time until the fate of the plan for reorganization is definitely decided. It does not seem to me, however, that the premise can be sustained.

Subsequent termination of jurisdiction—much less mere contemplation that such termination may occur—through failure of a suit or proceeding, would not destroy or even affect the validity of orders entered during the period when jurisdiction undisputedly existed. Brown v. Bass, 4 Wall. 262, 18 L. Ed. 330. It follows that fear of inability, in the event of liquidation, to treat all creditors alike, is no basis for denial of power to make orders, deemed to be in promotion of a plan of reorganization, so long as the effort to reorganize continues. Non constat, in a particular case, the sole device for avoidance of liquidation and consummation of reorganization may be the putting through of some compromise with respect to a matter of importance. Non constat also renunciation by this court of the power sought to be invoked by the petition would mean defeat of the legislative intent.

Manifestly, there should be very great caution on the part of any court with respect to instructing its officers to employ funds of which they are in charge in making payments to claimants in advance of precise ascertainment of the full amount of the just and allowable claims against the estate. On the other hand, I feel that it is equally manifest that, where the advantage to the estate and the creditors alike is clear, there should be no hesitancy by the court in granting to its agents permission to use the funds to accomplish the benefit—possible at the moment and probably not possible later.

In my judgment the proposed adjustment of the Uniontown claims is a plain instance for favorable action upon the application of the trustees. So far, therefore, as concerns those claims, an order may be taken as prayed for by the trustees.

### Toledo Claims.

Perhaps the question of law which arises here is the same as that which has been discussed above. The master's report, however, is not an unequivocal recommendation, on the facts, of sanction by the court of the trustees' suggested action, if there be power to authorize it, nor does it contain a summary of the specific facts, which impress me as rather complicated and which as yet I do not understand, or findings therefrom or thereon. As the record now stands, it would be quite difficult for me to form an opinion on the merits, as a business proposition, of the proposed compromise.

I should like the benefit of further consideration by the master of the fact phases of the matter, as well as of the legal problem in the light of what I have said in this memorandum. Accordingly, his report, with the papers annexed thereto, in regard to the Toledo claims will be sent back to him for a supplemental report.

When the supplemental report is returned to me, let the master give two days' notice to counsel, who may then arrange for an additional hearing before me if they desire it and apply for it promptly.

Settle order on the Uniontown claims on one day's notice.