**In re James E. JOHNSTON, Debtor.**

**STEELCASE, INC., Appellant,**

v.

**James E. JOHNSTON and Unsecured Creditors Committee, Appellees.**

**BAP No. EC–91–1769–MeOJ.
Bk. No. 90–26310–B–11.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 20, 1992.

Decided April 6, 1992.

As Amended on Denial of Rehearing June 1, 1992.

R. Dale Ginter, Sacramento, Cal., for appellant.

David Meegan, Sacramento, Cal., for appellees.

Before MEYERS, OLLASON and JONES, Bankruptcy Judges.

## AMENDED ORDER

The Panel filed an opinion resolving this appeal on April 6, 1992. On April 16 the appellant filed a motion for rehearing. The appellees opposed the motion. The motion for rehearing was denied by order dated May 18, 1992.

The order denying the motion for rehearing is HEREBY AMENDED to reflect that the Panel has filed an amended opinion on this date. Other than the modifications reflected in this amended opinion, the motion for rehearing is DENIED in all other respects.

JAMES W. MEYERS, Bankruptcy Judge:

### I

An unsecured creditor appeals from the bankruptcy court's order confirming a plan of reorganization, arguing that the plan improperly placed similar claims in separate classes and violated the absolute priority rule. We AFFIRM.

## II

### FACTS

The Appellant, Steelcase, Inc. ("Steelcase"), manufactures office furniture and related systems. Capital Office Systems, Inc. ("Capital") was a Steelcase dealer. Steelcase sold products to Capital on open account pursuant to a predetermined credit line. In addition, a wholly owned financing subsidiary of Steelcase financed large sales of its products for Capital. James E. Johnston ("Debtor") is the Chief Executive Officer and majority shareholder of Capital. The Debtor had guaranteed payment of Capital's debt to Steelcase.

On October 1, 1990, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("Code"). At this time, Steelcase and its financing subsidiary were allegedly owed $1,913,057.90 plus interest, attorney's fees, costs and other charges for products sold and delivered. Steelcase holds a non-priority, unsecured claim.

One day after the petition was filed, the Debtor sued Steelcase in state court. Steelcase subsequently removed the action to district court and obtained relief from the automatic stay to file a counterclaim against the Debtor.

The Debtor filed a disclosure statement and plan of reorganization. The plan has 26 classes. Steelcase's claim is classified separately in Class 23. In the plan, the Debtor disputes Steelcase's claim. In the event Steelcase is successful in its pending district court action and the Debtor does not obtain a stay of the enforcement of the judgment, the Debtor promises to pay the full amount of Steelcase's claim plus interest within 120 days of the entry of judgment by the district court.

On July 19, 1991, the bankruptcy court signed an order confirming the Debtor's plan. Steelcase appeals from that order.

## III

### STANDARD OF REVIEW

■ Two standards of appellate review apply to classification of claims. Issues such as similarity in priority and legal attributes and the necessity for treatment in separate classes are legal issues reviewable *de novo*. Whether there are any good business reasons to support the debtor's separate classification of claims is a question of fact. *Matter of Greystone III Joint Venture*, 948 F.2d 134, 141 n. 7 (5th Cir. 1991).

■ As to whether the absolute priority rule has been violated, a bankruptcy court's determination of the present value of future payments on a creditor's claim should be accorded substantial deference. *In re Camino Real Landscape Maintenance Contractors*, 818 F.2d 1503, 1508 (9th Cir.1987). Questions of statutory interpretation are subject to *de novo* review. *In re Acequia, Inc.*, 787 F.2d 1352, 1358 n. 5 (9th Cir.1986).

## IV

### DISCUSSION

■ An order confirming a reorganization plan is a final order subject to appellate review. *In re Fowler*, 903 F.2d 694, 695 (9th Cir.1990). Steelcase has appealed the order confirming the plan on the grounds that the plan unfairly placed similar claims in separate classes and that it violated the absolute priority rule.

### A.  *Claims Classification*

Section 1122 of the Code authorizes classification of claims which are "substantially similar" and for classification when reasonable and necessary for administrative convenience. *In re Wolff*, 22 B.R. 510, 511 (9th Cir.BAP 1982). Section 1122 provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court ap-

proves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

■ Although Section 1122 expressly provides that only substantially similar claims may be placed in the same class and allows a separate class of small unsecured claims, it does not expressly prohibit similar claims from being placed in separate classes. Many courts, while recognizing that Section 1122 does not explicitly forbid a debtor from placing similar claims in separate classes, have imposed limits on the debtor's power to do so. The most common rationale for imposing these limits is that classification of claims affects the integrity of the voting process. If claims could be arbitrarily placed in separate classes, the debtor could manipulate acceptance by artful classification. *Matter of Greystone III Joint Venture, supra,* 948 F.2d at 138.

The *Greystone* court reasoned that if Section 1122(a) were wholly permissive regarding the formation of different classes from similar types of claims, there would be no need for Section 1122 specifically to authorize a class of smaller unsecured claims. A broad interpretation of the powers to classify similar claims separately under Section 1122(a) would render Section 1122(b) superfluous, a result "anathema to elementary principles of statutory construction." *Id.* at 138–39. Consequently, the Fifth Circuit concluded that Section 1122 must contemplate some limits on classification of claims of similar priority. *Id.* at 139.

The Sixth and Eighth Circuits, like the Fifth Circuit in *Greystone,* hold that a debtor's power to classify creditors must be limited to the extent that classifications designed to manipulate class voting must be carefully scrutinized. Otherwise, the courts have reasoned, debtors could classify creditors in a manner to assure that at least one class of impaired creditors will vote for the plan, thereby satisfying the requirement set forth in 11 U.S.C. § 1129(a)(10) and making the plan eligible for the § 1129(b) cram down provisions. *Hanson v. First Bank of South Dakota,* N.A., 828 F.2d 1310, 1313 (8th Cir.1987); *In re U.S. Truck Co.,* 800 F.2d 581, 586 (6th Cir.1986). We find this reasoning persuasive and apply it in this appeal.

■ We affirm the bankruptcy court's finding that the classification of Steelcase's claim in Class 23 was proper and in compliance with Section 1122(a). The record does not establish that the separate classification of its claim was proposed to secure the vote of an impaired class of claims.

Moreover, the bankruptcy court made findings that Steelcase was situated differently than other creditors. It found that Steelcase was the only creditor with security in the assets of Capital and the only unsecured creditor whose claim was currently being litigated.

Steelcase contends that there is another creditor with a security interest in Capital, Fremont Financial. Fremont Financial, however, failed to file a proof of claim. Because its claim was listed as contingent, it is not treated as a creditor for purposes of voting or distribution. Sections 502(a), 1111(a), and 1126(a) of the Code. Steelcase further argues that its claims should not be classified from the other disputed claims. However, Steelcase's claim is the only claim which is being litigated outside of the bankruptcy court.

**B. *Absolute Priority Rule***

■ Steelcase also argues that the plan violates the absolute priority rule. The absolute priority rule requires that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988); *In re Green,* 98 B.R. 981, 982 (9th Cir.BAP 1989). A Chapter 11 plan of reorganization that fails to comply with the rule, as incorporated into the Code in Section 1129(b)(2)(B)(ii), may not be confirmed without the approval of creditors. *In re Green, supra,* 98 B.R. at 982. In relevant part, Section 1129(b) states:

(1) ... [T]he court ... shall confirm the plan ... if the plan ... is fair and equitable ... (2) ... [T]he condition that a plan be fair and equitable ... includes the following requirements: ... (B) With respect to a class of unsecured claims— (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b).

Subsection (i) appears to be satisfied in the instant case, since all unsecured creditors, including Steelcase, will be paid in full with interest. However, Steelcase contends that the Debtor's plan violates the absolute priority rule because the Debtor may be able to retain all rights in estate property and to use estate funds to pay his living expenses before he makes any payments to Steelcase. Steelcase interprets the absolute priority rule to prohibit any payments to a junior class of claimants before a senior class is *paid* under the plan. In contrast, the Debtor maintains that the rule merely prohibits payments to a class of claimants before a senior class is *provided for* in the plan.

At least two authorities have taken the Debtor's viewpoint. According to 5 L. King, Collier on Bankruptcy ¶ 1129.03[e] (15th ed. 1991) and the court in *In re Nite Lite Inns*, 17 B.R. 367, 372 (S.Cal.1982), Section 1129(b)(2)(B) does not require that a creditor's claim be paid in full on the effective date of the plan. The section contemplates a present-value analysis that will discount value to be received in the future.

Moreover, in *Norwest Bank Worthington v. Ahlers*, the Supreme Court used the term "provided for," not "paid in full." 485 U.S. at 202, 108 S.Ct. at 966. Further, the Congressional Report states: "Subparagraph (B) applies to a dissenting class of unsecured claims. The court must confirm the plan notwithstanding the dissent of a class of impaired unsecured claims if the plan provides for such claims to receive property with a present value equal to the allowed amount of the claims." 124 Cong. Rec. H11104–05 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17,421 (daily ed. Oct. 6, 1978). We decline to adopt Steelcase's contrary definition of the absolute priority rule.

Steelcase has devoted several pages of its brief to whether it actually will be paid in full, contending that there may not be enough money in the estate after the Debtor's living expenses and other creditors are paid. Steelcase, however, has not appealed the bankruptcy court's finding that the plan was feasible. Thus, in our evaluation of the absolute priority rule, we focus only on whether the plan provides that Steelcase will be paid in full. Whether the court clearly erred in finding that the estate would have sufficient funds to pay Steelcase the amount promised is not at issue. Under this analysis, the plan does not violate the absolute priority rule because Steelcase's claim has been provided for in full.

V

## CONCLUSION

The order on appeal is AFFIRMED. There is no evidence that the classifications of claims were designed to manipulate votes of impaired creditors. In addition, because the plan provided for payment of Steelcase's claim in full, it did not violate the absolute priority rule.